IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SAMUEL L. RUSSELL,

                Plaintiff,                  OPINION AND ORDER

v.

                                               21-cv-405-wmc

TYLER RODENSAL
and JESSE ALBRIGHT,

                Defendants.

---

*Pro se* plaintiff Samuel L. Russell, formerly a prisoner at Redgranite Correctional Institution, alleges that defendants violated his federal constitutional rights by failing to provide adequate medical care after he slipped in the shower and cut his toe on a broken tile. More specifically, Russell claims Redgranite Correctional Officer Jesse Albright and Sergeant Tyler Rodensal were deliberately indifferent to his toe injury in requiring Russell to walk approximately 50 feet to see a nurse, rather than transporting him in a wheelchair. Defendants filed a motion for summary judgment on the merits of plaintiff's Eighth Amendment claim (dkt. #18), and the evidence of record at summary judgment establishes that a reasonable jury could not find: (1) Russell's toe injury constituted an objectively serious medical condition; or (2) Albright or Rodensal consciously disregarded or were deliberately indifferent to Russell's need for medical attention for his toe. Accordingly, the court will grant defendants' motion for summary judgment.[1]

---

[1] For these reasons, the court need not reach defendants' alternative assertion of qualified immunity.

UNDISPUTED FACTS[2]

Plaintiff Russell's claim is based on alleged events at Redgranite in December 2019. At that time, defendants Albright and Rodensal were working at Redgranite for the Wisconsin Department of Corrections ("DOC") as a Correctional Officer and Sergeant, respectively. Neither Albright nor Rodensal are medical professionals.

Around 9:45 p.m. on December 26, 2019, Russell was showering in his prison unit when he slipped on a broken shower tile and accidentally cut his right big toe. Russell informed the unit's on-duty officer that he had cut his toe and requested to be seen by Redgranite's Health Services Unit ("HSU"). For security reasons, inmates must be escorted by prison security staff to move about the institution after 9:00 p.m., including to the HSU. Officer Albright responded to the on-duty officer's radio call for an escort and reported to Russell's prison unit to escort him to the HSU shortly thereafter. Even before Officer Albright arrived to escort him to the HSU, Russell further represents that he also reported his injury to Sergeant Rodensal. According to Russell, despite informing him that he was in "extreme pain[,]" Sergeant Rodensal nevertheless instructed Russell to wait on a set of stairs by the sergeant's station window until a scheduled prison shift change occurred a few minutes later at 10:00 p.m. (Dkt. #27, at 2.)[3]

---

[2] Unless otherwise indicated, the following facts are material and undisputed. Consistent with its practice, the court has drawn these facts from the parties' proposed findings and the evidence of record viewed in a light most favorable to plaintiff. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must . . . construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

[3] Sergeant Rodensal maintains that he was not on duty until 10:00 p.m. and does not recall Russell reporting any injury or pain to him at all (dkt. #22, at 3), but the court must accept plaintiff's version of events for purposes of summary judgment absent overwhelming evidence to the contrary.

Upon Officer Albright's arrival, Russell specifically asked for a wheelchair to transport him to the HSU, having informed Albright that he had an "open wound" and was "in extreme pain."  (Dkt. #27, at 3.)  According to Russell, he also showed Albright his right foot wrapped with a "bloody wash rag."  (*Id*.)  Russell states that Albright "did not physically inspect the wound" but "did in fact see that Russell's toe was bleeding." (Dkt. #35, at 9-11.)  Although Albright felt that a wheelchair escort was unnecessary, he still asked Russell what happened and relayed Russell's request for a wheelchair to Rodensal.[4]

After Sergeant Rodensal agreed that a wheelchair escort to the HSU was unnecessary, Russell claims he then "plead[ed]" with Albright to be brought to the HSU in a wheelchair, at which point Rodensal opened the window to the sergeant's station, yelling at Russell to "stop being a baby" and walk to the HSU.  (Dkt. #27, at 3.)  Russell then walked with a limp approximately 50 feet to the HSU in shower sandals, with his right toe wrapped in a washcloth.[5]  (Dkt. #35, at 13.)  According to Russell, the outdoor pathway he took to the HSU was covered in snow, dirt, and salt.  (Dkt. #35, at 14.)

At 10:16 p.m., Russell arrived at the HSU and was assessed by Nurse Debra Bellin. She did not note any acute distress, actual or suspected pain, or ongoing bleeding. Although Russell states that he told Nurse Bellin his toe was "in pain every[] time he put

---

[4] Officer Albright similarly denies seeing Russell in pain or bleeding, and further reported this to Sergeant Rodensal, but the court will also assume for purposes of summary judgment, that Russell claimed to be in pain and appeared to be bleeding.

[5] Although Officer Albright states that Russell "appeared to be walking normally" (dkt. #23, at 4), the nurse who provided Russell with care at the HSU also reported that he walked with a limp.

3

his foot down and his weight on it" (dkt. #35, at 19), her contemporaneous report of the encounter states that Russell denied being in pain. (Dkt. #21-1, at 8.) Regardless, there is no dispute that Nurse Bellin cleaned the .5 centimeter cut on Russell's right big toe with soap and water, dried it, applied a topical antibiotic and a bandage, and informed Russell that he did not need stitches. Russell further claims that on his walk back from the HSU, Albright admitted he knew it was "wrong" for Russell to have been made to walk, but that he had to follow Rodensal's orders. (Dkt. #27, at 3-4.)[6]

In the weeks after Nurse Bellin's initial assessment of Russell's cut toe, he was seen by HSU staff for four follow-up visits, and refused a fifth. Specifically, in response to a Health Services Request ("HSR") that he submitted the day he cut his toe, Russell was first seen by Nurse Cindy Barter the very next day, December 27, 2019, for a follow-up in the HSU. Nurse Barter advised Russell to use ice with a "skin barrier" for 20 minutes at a time. Nurse Bellin, to whom Nurse Barter referred Russell's HSR, also ordered him a three-day prescription for Tylenol. That same day, Russell submitted a second HSR indicating his toe was numb and asking for a checkup and something to wrap his foot with when he showered. In response, Nurse Bellin directed him to wear his shower shoes and scheduled a second follow-up visit. At that visit, on January 3, 2020, Nurse Barter assessed Russell's cut toe and noted that the toe showed no signs or symptoms of infection, redness, swelling, discoloration, deformity, drainage, or pain. During Russell's third follow-up on January 9, 2020 -- a primary care visit with Russell's advanced care provider -- Dr. Kira Labby noted he reported a subjective, decreased sensation in the tip of his right toe, although the

---

[6] Officer Albright also denies having had any such conversation.

4

laceration was healed, with no signs of infection. On February 4, 2020, Russell submitted a third HSR about his toe, noting that it was still numb on the tip and around the front of the nail, and further asking if there was anything he could do to get the feeling to return. Nurse Barter responded that numbness and tingling after a laceration or incision can take 6 months to 2 years to heal. She added that if the numbness does not heal within that period, the sensation most likely will not return to normal.

Finally, Russell was seen again by Dr. Labby on April 22, 2020, in the context of a visit related to other medical conditions. At that time, Russell had no other complaints or issues regarding his toe. Russell did submit a fourth HSR about his toe that was received by the HSU on May 27, 2020, and asked about the procedure for bringing an inmate with a serious foot injury to the HSU. After a nurse attempted to see Russell that day, however, he declined the visit and signed a Refusal of Recommended Health Care form, where he represented that he was not injured and was only reaching out with a question. Following this final inquiry, no further medical appointments for Russell's right foot or toe appear to have been requested or scheduled.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The

nonmovant must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish there is a genuine triable issue, which requires him to "do more than simply show that there is some metaphysical doubt as to the material facts." *Anderson*, 477 U.S. at 256-57, 261. To prevail on a claim of constitutionally inadequate medical care in violation of the Eighth Amendment, plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

First, a medical need is "serious" if it: so obviously requires treatment that even a lay person could recognize the need for medical attention; carries risk of permanent serious impairment if left untreated; results in needless pain and suffering; or significantly affects an individual's daily activities. *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 242 (7th Cir. 2021). However, even a diagnosed medical condition does not necessarily establish a serious medical need; no matter how serious the condition, a plaintiff must show that the failure to treat the condition caused him injury or a serious risk of injury. *Jackson v. Pollion*, 733 F.3d 786, 789-90 (7th Cir. 2013).

Second, "deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it, which is a decidedly high standard by itself. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, acts of deliberate indifference require

6

more than negligence, or even gross negligence, but require something less than purposeful acts. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994). Here, defendants argue that plaintiff cannot prove his toe injury constituted an objectively serious medical need, and that even if it were, plaintiff cannot prove defendants were deliberately indifferent to any such need. The court addresses each argument in turn below.

I. **Serious Medical Need**

Defendants contend that plaintiff's cut toe cannot constitute an "objectively serious medical need" because it had stopped bleeding by the time he arrived at the HSU, was easily treated, did not require stitches, and did not become infected. Minor injuries -- such as split lips, swollen cheeks, and lacerations not requiring stitches -- do not generally rise to the level of an objectively serious medical need under the Eighth Amendment. *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (citing *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991)); *see also Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (noting "trivial -- indeed, almost nonexistent" injuries that "consist[] only of minor scratches, quickly and easily treated with a gauze bandage" are not serious medical needs). The undisputed evidence in the record indicates that plaintiff's toe was evaluated by three, separate health providers in the weeks and months after his injury, and *none* found that the cut -- measuring .5 centimeters, or less than one-fifth of an inch -- caused plaintiff to experience an infection or other long-term harm. Nor has plaintiff identified any evidence to support his claim that he lost enough blood to pose a risk of serious harm as a result of his injury.

Nevertheless, plaintiff claims to have suffered "extreme pain" at the time of the injury, then milder pain when he was first being evaluated by Nurse Bellin at the HSU.

(Dkt. #27, at 2.) Certainly, significant, prolonged pain can constitute an objectively serious medical condition on its own. *E.g., Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (two weeks of pain from untreated abscessed tooth); *Perez v. Fenoglio*, 792 F.3d 768, 774, 777-78 (7th Cir. 2015) (ten months of pain from untreated wound that dislocated thumb and tore ligament). Even if plaintiff's cut toe caused him as much pain as an abscessed tooth or a torn ligament in the moment, however, the nurse treating plaintiff within approximately 30 minutes of the injury saw no need for pain intervention of any kind that day and only sent him a prescription for Tylenol after he requested it a day later. Moreover, one week after he cut his toe, a nurse still did not identify any signs or symptoms of infection, redness, swelling, discoloration, deformity, drainage, *or* pain in connection with the cut. By April 2020 -- four months after the injury -- plaintiff was no longer complaining to medical providers that he was experiencing pain in his toe, but rather numbness at the toe's tip, and by May 2020, he declined treatment for his toe altogether, stating he had no further injury. (Dkt. #35, at 25.)

    Finally, in his more recent affidavit in opposition to summary judgment, plaintiff still attests that he continues to experience numbness around the "top and tip" of his toe that causes "difficulties" in everyday life and in recreational activities, including snowboarding and hiking. (Dkt. #30, at 4.) On its own, plaintiff's assertion of ongoing problems, and even pain, arguably presents a closer question for purposes of demonstrating that an objectively serious medical condition existed and defeating summary judgment. However, the only evidence plaintiff points to in support of his argument is his "self-serving" affidavit. While this testimony can be "a legitimate method of introducing facts

on summary judgment[,]" *see McKinney v. Off. of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017), Rule 56 "demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the truth of the matter asserted." *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir. 1998). Indeed, a party opposing summary judgment cannot rely on his own, unsupported say-so that is flatly refuted by the hard evidence offered by his opponent. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010). The hard evidence defendants offer -- contemporaneous medical records and plaintiff's own statement that he did not have a foot injury by May 2020 -- cuts squarely against his claim now. (*See* dkt. #21-1, at 20.) Regardless, based on the overwhelming and undisputed medical evidence in the record, *no* reasonable jury could find that the *named defendants* here -- a correctional officer and sergeant -- had reason to believe plaintiff was presenting an objectively serious medical need based on a small cut on plaintiff's right big toe, bleeding or not. Accordingly, defendants are entitled to summary judgment on plaintiff's claim on that basis alone.

## II. Deliberate Indifference

Even if plaintiff were able to prove that the small cut on his toe presented defendants with a serious medical need, his Eighth Amendment claim would still fail because no reasonable jury could find that either defendant acted with deliberate indifference to his apparent medical need. Plaintiff's deliberate indifference claim is predicated on two arguments: (1) defendants should have promptly transported him to the HSU in a wheelchair, particularly given the risk of infection from snow, salt, and dirt on the outdoor pathway he had to walk on; and (2) defendants' conduct towards him

demonstrates a "callous, culpable mindset" and "an utter disregard for his safety." (Dkt. #27, at 3.) Neither argument has merit.

*First*, plaintiff has not identified any "substantial risk of serious harm" that defendants knowingly disregarded in requiring him to walk to the HSU. The undisputed evidence shows that plaintiff suffered a small cut on a shower tile and reported some bleeding, of which defendants were aware, but he was able to walk the relatively short distance to the HSU with his shower shoes and wrapped toe for treatment. Moreover, plaintiff's cut toe was no longer bleeding by the time he was seen approximately 30 minutes later in the HSU, and his pencil eraser-sized cut was effectively treated with a topical antibiotic and a bandage. As defendants point out, ailments "for which many people who are not in prison do not seek medical attention" are not, standing alone, conditions for which the denial of a particular treatment violates the Constitution. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Although plaintiff preferred wheelchair transport in the winter, he is not competent to diagnose himself, nor does he have the right to choose his own treatment. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Nor is plaintiff's claim that his brief wait for defendant Albright to escort him to the HSU -- or any delay caused by Redgranite's shift change and defendants' conversations about how to transport him -- probative of deliberate indifference when he waited, at most, 30 minutes to be seen for medical attention. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995) (dismissing claim based on two-hour delay in treatment of inmate's broken hand); *O'Malley v. Litscher*, 465 F.3d 799, 806 (7th Cir. 2006) (90-minute delay caused by shift change was not deliberate indifference). A delay in treatment that is "inexplicable"

and "serves no penological interest" can be indicative of deliberate indifference, *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), but it is undisputed that plaintiff here had to be escorted to the HSU for security reasons, this escort was delayed by a shift change, and the entire delay lasted less than half an hour. Thus, no reasonable jury could find the delay supported a finding of deliberate indifference.

*Second*, plaintiff mischaracterizes the standard against which deliberate indifference claims are analyzed. Even gross negligence is insufficient to prove deliberate indifference; plaintiff would have to prove that defendants were, in essence, criminally reckless. *See Farmer*, 511 U.S. at 839. Given the superficial nature of plaintiff's injuries and relatively prompt arrival at the HSU, defendants' refusal to let him use a wheelchair rises nowhere near that level. If defendant Rodensal told plaintiff to "stop being a baby" when requiring him to walk to the HSU, even knowing it would require him to negotiate snow, dirt and salt, that may be callous, but no reasonable jury could find it even gross negligence, much less deliberate indifference, given that he only had to walk a short distance (50 feet), his apparent minor injury was wrapped, he was wearing shower shoes, and immediate medical treatment awaited him on the other side. *See Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008) ("[T]he Constitution does not compel guards to address prisoners in a civil tone using polite language."). Similarly, defendant Albright's compliance with Rodensal's instruction to walk plaintiff to the HSU under these circumstances also does not rise to this standard. Accordingly, the court will grant defendants' motion for summary judgment on plaintiff's Eighth Amendment claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #18) is GRANTED.

2. Plaintiff's Eighth Amendment claim against defendants Rodensal and Albright is DISMISSED with prejudice.

3. The clerk of court is directed to enter judgment and close this case.

Entered this 1st day of December, 2023.

                                BY THE COURT:

                                /s/
                                _____
                                WILLIAM M. CONLEY
                                District Judge